**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN O'DONNELL<br>3815 Day Star Drive<br>Doylestown, PA 18902<br><br>v.<br><br>BIOTE MEDICAL, LLC<br>1875 W. Walnut Hill Ln, Ste 100<br>Irving, Texas 75038 | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | NO. |

## COMPLAINT

Plaintiff, Karen O'Donnell, by and through her undersigned counsel, hereby submits this Complaint against Defendant Biote Medical, LLC, and states:

1. This action for equitable, monetary, and other relief is brought by Plaintiff, Karen O'Donell, to redress intentional violations by Defendant, Biote Medical, LLC ("Biote"), of rights secured by the laws of the United States and the statutory and common law of the Commonwealth of Pennsylvania.

2. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e, *et seq*. ("Title VII"); and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq*.

## JURISDICTION

3. Jurisdiction is proper pursuant to 28 U.S.C. §§ 45, 1331, 1337, 1343 and 1345.

4. This action is authorized pursuant to § 70(f) of Title VII and 42 U.S.§ 1981(a).

5. Plaintiff has exhausted federal and state administrative remedies, by submitting a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC"), No.

202505269 on April 25, 2025, dual filed with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 17F-2026-60564.

6. The EEOC issued a right-to-sue letter on June 16, 2026, that was received by Plaintiff on June 19, 2026.

7. This suit is timely filed.

8. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1376.

**VENUE**

9. As set forth below, a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania.

10. Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

**STATEMENT OF FACTS**

11. Plaintiff is an adult female currently residing in Doylestown, Pennsylvania.

12. Defendant Biote is a Delaware corporation, with its principal place of business located at 1875 W. Walnut Hill Ln, Ste 100, Irving, Texas 75038.

13. Biote was and remains an employer withing the meaning of Title VII and the PHRA.

14. Biote hired Plaintiff in September 2022 as District Manager covering South Jersey and Eastern Pennsylvania. Plaintiff performed her work remotely from her home, or by traveling to clients.

15. Throughout her employment, Plaintiff received good performance reviews and was qualified for her position.

16. Plaintiff reported to Jayme Brendle.

17. Ms. Brendle subjected Plaintiff to hostile work environment and differential treatment on the basis of Plaintiff's sexual orientation continuously throughout her employment, from the time that Plaintiff began reporting to Ms. Brendle.

18. Ms. Brendle repeatedly advised Plaintiff and other employees not to interact with anyone at corporate, and that all communications should go through Ms. Brendle.

19. Specifically, Plaintiff is a heterosexual female, and Ms. Brendle demonstrated a bias for homosexual employees, by subjecting them to preferential treatment, and against heterosexual employees, including Plaintiff, by singling them out harassing and targeted behaviors.

20. For example, Ms. Brendle provided less support and coaching to Plaintiff than she did to another, homosexual employee, including providing preferential treatment for this employee with regard to a sales trip in Plaintiff's territory.

21. The trip presented an opportunity for Plaintiff to network and improve sales in her territory, and Ms. Brendle was aware of that.

22. When Plaintiff complained about this preferential treatment to the employee, that employee shared her complaints with Ms. Brendle.

23. Ms. Brendle then treated Plaintiff with hostility and refused to speak with her.

24. Ms. Brendle would approve meal expenses for homosexual co-workers that she would not approve for Plaintiff.

25. In November of 2024, Plaintiff identified an issue with a physician who was a Biote customer pursuant to the terms of a written agreement. Specifically, Plaintiff was concerned as to whether the provider had undergone contractually required training.

26. Plaintiff asked Ms. Brendle to assist her in handling the situation with the provider and join in a call to discuss the matter with the provider.

27. Ms. Brendle ignored Plaintiff's request for twelve days, and only then advised her to terminate Biote's agreement with the physician.

28. On December 3, 2024, Plaintiff asked Ms. Brendle if there was another way to handle the situation as Biote had previously worked with other providers to address similar situations.

29. Ms. Brendle did not respond.

30. Plaintiff again asked Ms. Brendle to join in the conversation with the physician to terminate the agreement.

31. Ms. Brendle again ignored Plaintiff.

32. On December 10, 2024 Plaintiff contacted Lawrence Marchman, Ms. Brendle's supervisor, to discuss the provider situation and Ms. Brendle's ongoing hostile treatment.

33. Mr. Marchman was aware of the purpose of that December 10, 2024 call.

34. Mr. Marchman spoke with Plaintiff in the morning on December 12, 2024.

35. During the meeting, Mr. Marchman agreed that Biote should explore other options than terminating the provider, and asked for examples of Ms. Brendle's hostile behavior.

36. At 5:30 that same day, December 12, 2024, Biote terminated Plaintiff's employment.

37. On information and belief, other, homosexual employees, received more support from Brendle and Biote when confronted with a difficult physician relationship, and were not terminated when they asked for assistance.

38. During the call to terminate her employment, Plaintiff again explained the ongoing hostile and discriminatory treatment.

39. Gregg Rich of Biote's Human Resources department asked Ms. Brendle to leave the call and collected additional details of Plaintiff's complaints.

40. Mr. Rich advised Plaintiff that the termination was paused until the following morning so that he could investigate.

41. On December 13, 2024, in the morning, Biote again terminated Plaintiff's employment.

42. During her exit interview, Mr. Rich advised Plaintiff that he would continue to investigate.

43. Plaintiff also disclosed to Mr. Marchman that Ms. Brendle had subjected her to bullying and hostile treatment.

44. Ms. Brendle determined to use the issue with the doctor as a pretext to terminate Plaintiff on the basis of her sexual orientation.

45. On information and belief, other employees have complained to Biote about Ms. Brendle's treatment of heterosexual employees.

46. On January 24, 2025, Mr. Marchman advised Plaintiff that he wanted her to return to her employment at Biote.

47. On January 29, 2025, Mr. Marchman advised Plaintiff via text that he was "working on" getting her reinstated to employment and that "things were moving along."

48. On information and belief, Mr. Marchman discussed with other Biote employees that Plaintiff was returning to Biote.

49. Biote never reinstated Plaintiff.

50. In reliance on these promises of reinstatement, Plaintiff delayed in her job search.

51. Biote's conduct towards Plaintiff is harassment on the basis of sexual orientation in violation of Title VII and the PHRA.

52. Biote's termination of Plaintiff is discrimination on the basis of her sexual orientation in violation of Title VII and the PHRA.

53. Biote's termination and refusal to reinstate Plaintiff in retaliation for her complaints regarding discrimination are a violation of Title VII and the PHRA.

54. Plaintiff has been damaged as a result of Biote's conduct and retaliation.

## COUNT I

### TITLE VII
### SEXUAL ORIENTATION DISCRIMINATION

55. Plaintiff incorporates by reference the foregoing paragraph as if more fully set forth herein.

56. Biote subjected Plaintiff to discrimination on the basis of her sexual orientation.

57. Plaintiff was treated less favorably than homosexual employees under the supervision of Ms. Brendle.

58. Plaintiff complained to Biote about this treatment, and Biote acknowledged the issue and promised to investigate.

59. Biote nevertheless terminated her employment on December 12, 2024 and again on December 13, 2024, because of her sexual orientation.

60. Plaintiff's sexual orientation was a substantial factor in Biote's decision to terminate her employment.

61. Plaintiff has suffered mental injury, monetary loss and wage loss as a result of Biote's violations of Title VII.

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and punitive damages in an amount exceeding $150,000, plus costs of this action, reimbursement of back pay

with interest, front pay, attorneys' fees, punitive damages, and such other relief as the Court deems just and proper.

## COUNT II

### TITLE VII
### RETALIATION

62. Plaintiff incorporates by reference the foregoing paragraph as if more fully set forth herein.

63. Biote subjected Plaintiff to retaliation on the basis of her complaints regarding sexual orientation discrimination.

64. Plaintiff complained to Biote about her discriminatory treatment, and Biote acknowledged the issue and promised to investigate.

65. Biote nevertheless terminated her employment in retaliation for her complaints.

66. Plaintiff has suffered mental injury, monetary loss and wage loss as a result of Biote's violations of Title VII.

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and punitive damages in an amount exceeding $150,000, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, punitive damages, and such other relief as the Court deems just and proper.

## COUNT III

### PHRA
### SEXUAL ORIENTATION DISCRIMINATION AND RETALIATION

67. Plaintiff incorporates by reference the foregoing paragraphs as if more fully set forth herein.

68. Biote's unlawful discrimination and retaliation as set forth herein is a violation of the PHRA.

69. The egregious nature of Biote's conduct justifies a recovery of monetary damages for violations of the PHRA.

WHEREFORE, Plaintiff demands judgment in her favor for compensatory and punitive damages in an amount exceeding $150,000, plus costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, punitive damages, and such other relief as the Court deems just and proper.

ANTHEIL MASLOW & MACMINN, LLP

By: s/ Patricia C. Collins
Patricia C. Collins, Esquire
Attorney for Plaintiff